UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ROBERT E. LEE,**

   **Plaintiff,**    **CIVIL ACTION NO. 05-CV-60238-AA**

vs.

          **DISTRICT JUDGE JOHN CORBETT O'MEARA**

**KARLA MCDONALD,**   **MAGISTRATE JUDGE MONA K. MAJZOUB**

   **Defendant.**
_____/

### REPORT AND RECOMMENDATION

**I. RECOMMENDATION:** This Court recommends that Defendant's motion to dismiss Plaintiff's second amended Complaint (docket no. 31) be GRANTED as to Count II: Gross Negligence, and DENIED as to Counts I and III.

**II. REPORT:**

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. Plaintiff has responded to the motion to dismiss. Defendant has filed a reply brief. The matter is now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B). The Court is disposing of two other motions, Defendant's Motion for a Protective Order Staying Discovery and Plaintiff's Motion to Strike Defendant's Reply Brief in Opposition to Defendant's Second Motion to Dismiss, by separate Order contemporaneously with this Recommendation.

  *A. Factual Background*

These facts are taken from Plaintiff's Second Amended Complaint. Plaintiff claims that Defendant McDonald, a rehabilitation counselor employed at Michigan Rehabilitation Services, contacted Plaintiff on or about March 1, 2005 to notify him of his eligibility for an Individualized Plan

-1-

for Employment (IPE) and to inform him of his choices as to the development of the IPE. Defendant met with Plaintiff and assured him that his IPE would be developed so that Plaintiff would receive monetary support for transportation, to continue his education, and for other expenditures related to seeking and obtaining employment. Between March 1 and June 28, 2005 Plaintiff contacted Defendant numerous times by phone to assess the status of his case. Defendant allegedly never returned any messages and did not otherwise contact Plaintiff during this time period. Plaintiff enrolled and attended classes at Henry Ford Community College in May 2005 at his own expense.

Plaintiff returned a phone call from Defendant on June 27, 2005 and during their conversation Defendant allegedly expressed anger and frustration with Plaintiff, shouted at him, repeatedly referred to Plaintiff as a "low-life criminal" and repeatedly stated that Plaintiff would never be able to obtain employment because "no one would hire someone like him." Defendant disconnected the phone call, and Plaintiff was unable to contact Defendant immediately after this phone call. Defendant and her employer have allegedly provided services to other persons similarly situated to Plaintiff having past criminal convictions and/or mental disabilities. In August 2005 Plaintiff filed administrative complaints with the Michigan Department of Civil Rights and with the City of Detroit Human Rights Department. On October 4, 2005 Defendant sent Plaintiff a letter stating that his case with Rehabilitation Services was closed due to an inability to contact him. Plaintiff alleges that Defendant's behavior was blatant, willful, malicious and wanton.

  *B.  Claims*

Plaintiff's Second Amended Complaint alleges three counts. The first is a violation of the right to equal protection under the Fourteenth Amendment. The second and third counts allege causes of action under state law for gross negligence and breach of fiduciary duty.

In his first count, Plaintiff alleges that he, as a class of one, was treated differently than other clients of the Michigan Rehabilitation Services who had also been convicted of a felony and/or suffered from mental illness and have sought and obtained services from Defendant and the agency for which she worked. He contends that he suffered mental, emotional, and financial injury as a result of Defendant's treatment. Finally, Plaintiff alleges that Defendant's termination of his case was a violation of his equal protection rights under the Fourteenth Amendment.

In his second count Plaintiff alleges that in undertaking her duty to assist persons with mental illness and other disabilities to obtain vocational training and employment, Defendant was knowingly involved in a situation requiring the exercise of ordinary care and diligence to avert emotional, mental, and financial injury to another. Defendant allegedly failed to exercise ordinary care when she insulted Plaintiff and refused to perform her duty to assist Plaintiff because of his criminal record. Plaintiff contends that Defendant could have avoided closing Plaintiff's case and causing severe emotional, mental and financial injury to Plaintiff through the use of ordinary care and diligence. Defendant allegedly failed to use such care and diligence causing Plaintiff's injuries when this possibility of injury was obvious to the ordinary mind.

Plaintiff's third count alleges that Plaintiff placed faith, confidence, trust and reliance on the judgment and advice of Defendant and that Defendant had a duty to act for the benefit of Plaintiff with respect to matters within the scope of their relationship as counselor-beneficiary. Defendant allegedly betrayed Plaintiff's confidence by arbitrarily closing Plaintiff's case. Plaintiff contends that due to this breach of fiduciary duty he was not able to obtain compensation for educational costs, the benefits of an IPE, or other benefits of participation in the rehabilitation and/or vocational training program.

Plaintiff seeks declaratory relief as well as compensatory and punitive damages. He also seeks attorney fees and costs. Defendant is sued in her individual capacity only.

*C.    Standard of Review*

Defendants have moved to dismiss Plaintiff's Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Dismissal under this rule is appropriate when it is clear that no relief could be granted under any set of facts that could be proved consistent with Plaintiff's allegations. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In considering this motion, the Court must accept as true the well-pleaded factual allegations in Plaintiff's complaint. *Id.* The Court does not have to accept as true legal conclusions or unwarranted factual inferences, however. *Id.*

*D.    Equal Protection Clause*

Defendant first argues that this Court lacks jurisdiction over his Equal Protection Clause claim because Plaintiff has failed to allege that he is a member of a protected class. Defendant contends that neither mental illness nor a former felony conviction places Plaintiff in a protected class. Defendant also argues that Plaintiff has failed to provide factual support for his claim that he was denied any constitutional right.

Plaintiff responds by citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), for the proposition that he may show an equal protection violation not based on membership in a protected class. In that case, the Court recognized that a successful equal protection claim may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. The Court found that Olech's allegations that the Village arbitrarily demanded a 33-foot easement as a condition of connecting her property to the municipal water supply, where the Village required only a 15-foot easement from other similarly situated owners, stated a claim. *Id.* at 565.

In her reply brief, Defendant does not discuss *Olech*. She continues to argue that Plaintiff is not within a protected class and that no violation of the Equal Protection Clause occurred.

This Court may not ignore *Olech*. Under that case, an equal protection claim is stated even if there is no protected class so long as the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Plaintiff has made these allegations. He alleged in his amended complaint that he was treated differently from those who also had been convicted of a felony and/or those suffering from mental illness. Plaintiff alleged that Defendant acted willfully and maliciously. Finally, Plaintiff alleged that there was no rational basis for the difference in treatment. Because the Court is considering a motion to dismiss, Defendant's argument that Plaintiff has failed to provide factual support beyond his allegations is not a basis for granting the motion. *See Morgan*, 829 F.2d at 12.

  *E.  Immunity*

With regard to Defendant's second argument for dismissal, Defendant contends that this Court lacks jurisdiction over Plaintiff's claims because she is entitled to qualified governmental immunity. Defendant recognizes that Plaintiff has sued her in her individual capacity, but Defendant contends that the claims are "actually against defendant . . . while she was acting in her official capacity." Defendant then argues that federal courts lack jurisdiction over state officials sued in their official capacities.

Defendant may not unilaterally change the capacity in which Plaintiff has sued her. Plaintiff has sued Defendant in her individual capacity, therefore Defendant's arguments applicable to official capacity suits are not relevant.

Defendant also contends that her remarks to Plaintiff do not violate any clearly established federal law. Defendant argues that she is entitled to qualified immunity as she is being sued in her individual capacity. Government officials performing discretionary functions are entitled to immunity from civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982). The two-step process courts employ to decide whether a governmental employee is shielded by qualified immunity examines first whether a constitutional right has been violated considering the plaintiff's allegations in a light most favorable to plaintiff. If so, the next step is to determine whether that right was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). Some courts use a third step which asks whether plaintiff offered sufficient evidence to show what the official did was objectively unreasonable in light of the clearly established constitutional right. *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 901 (6th Cir. 2004). Qualified immunity is an affirmative defense that must be pleaded by the defendant official, although the burden is on Plaintiff to show that Defendant is not entitled to qualified immunity. *Harlow*, 457 U.S. at 815; *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Defendant focuses on the allegations of verbal abuse, and argues that they do not form the basis for a claim. She fails to address Plaintiff's allegation that her closing of his case with the agency violated his equal protection rights. Under the reasoning above, taking Plaintiff's allegations as true, he has stated a claim of a violation of the Equal Protection Clause. Defendant also fails to address why *Olech* is not clearly established law in that it was decided in 2000 and Defendant's acts occurred in 2005. Therefore, the Court finds that the right at issue was clearly established. There is no argument that the case would not put a reasonable person on notice that her acts would violate Plaintiff's equal protection rights. Whether Defendant's action of closing Plaintiff's case was objectively unreasonable given this clearly established right hinges on the facts of this case. The parties disagree on who is at fault for the lack of contact which led to the closing of the case. Plaintiff alleges that he tried unsuccessfully to contact Defendant. Defendant contends that she closed Plaintiff's case because she could not contact Plaintiff. This is a question of fact which will have to be litigated. Viewing the case as the Court must at this stage of the proceedings, Defendant is not entitled to qualified immunity.

F.   *Exhaustion of Administrative Remedies*

Next, Defendant argues that this Court lacks jurisdiction because Plaintiff failed to exhaust his administrative remedies under the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. However, as seen from the above summary of Plaintiff's claims, he has not brought any claims under the Rehabilitation Act. Defendant's arguments that Plaintiff may not maintain a claim under that Act therefore do not provide a basis for dismissing the Complaint or any part thereof.

G.   *State Law Claims*

1.   *Gross negligence*

Defendant's final argument is that this Court lacks jurisdiction over the state law claims of gross negligence and breach of fiduciary duty. She argues that gross negligence is defined under Michigan law as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. *Mich. Comp. Laws* § 691.1407(7)(a). Because Plaintiff has only alleged that Defendant failed to use ordinary care, Defendant contends that he has failed to state a claim. For the elements of the claim, Plaintiff relies on *Gibbard v. Cursan*, 225 Mich. 311, 196 N.W. 398 (1923), *overruled, Jennings v. Southwood*, 446 Mich. 125, 521 N.W.2d 230 (1994). In *Jennings*, the Michigan Supreme Court discarded *Gibbard*'s gross negligence doctrine. 446 Mich. at 132. It noted that the doctrine was merely an alternative label used to describe the doctrine of last clear chance. *Id*. Because the doctrine of contributory negligence was no longer in force in the State, the last clear chance doctrine was no longer needed. The *Jennings* court adopted a new definition of gross negligence applicable to the Emergency Medical Services Act which was the one the Legislature enacted in *Mich. Comp. Laws* § 691.1407(7)(a) ("conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results"). Therefore, Plaintiff's attempt to state a claim for gross negligence under *Gibbard* must be rejected. That standard is no longer the law in Michigan.

Even if the *Gibbard* definition of gross negligence was still the law, it is clear that it was a doctrine applicable to cases where the plaintiff had been negligent first, but the defendant had the opportunity to avoid injury to the plaintiff in spite of the plaintiff's earlier negligence. There is no allegation of a negligent act made by Plaintiff in this case. Accordingly, Plaintiff would have failed to state a claim for gross negligence even if the *Gibbard* definition were still the law. *See Malcolm v. City of East Detroit*, 180 Mich. App. 633, 643, 447 N.W.2d 860 (1989) ("for a gross negligence claim to be actionable it must allege that the defendant's negligent conduct occurred subsequent to some negligent conduct on the part of the plaintiff"), *rev'd on other grounds*, 437 Mich. 132, 468 N.W.2d 479 (1991); *Graham v. Gratiot Co.*, 126 Mich. App. 385, 388, 337 N.W.2d 73 (1983) ("gross negligence refers to the defendant's subsequent negligence, *i.e.*, negligent conduct by the defendant which occurs subsequent to the plaintiff's negligence.").

Plaintiff has also referred to the statutory definition of gross negligence set out above. This definition requires reckless conduct. Plaintiff alleges that Defendant acted without ordinary care but does not allege that Defendant acted recklessly. Plaintiff's claim is that Defendant acted intentionally-- that she intentionally terminated his case with her agency. This claim of an intentional act is not negligence of any kind. *Jennings*, 446 Mich. at 137-38. Accordingly, because Plaintiff does not allege that Defendant acted recklessly and because Plaintiff's claim is for conduct other than negligence, he has failed to state a claim for gross negligence under the statutory definition. Defendant's motion to dismiss this count of Plaintiff's Second Amended Complaint should be granted.

    2.    *Breach of fiduciary duty*

Defendant's final argument is that she is not a fiduciary to Plaintiff; therefore, she could not have breached any fiduciary duty to him. Defendant fails to cite any authority in support of this contention, however. Plaintiff responds that to state a claim he need only allege that Plaintiff placed

faith, confidence, trust and reliance upon the judgment and advice of Defendant, that Defendant had a duty to act for the benefit of Plaintiff with respect to matters within the scope of their relationship, and that the confidence was reposed and betrayed. *See Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 196 480 N.W.2d 910 (1991) (fiduciary relationship arises "from the reposing of faith, confidence, and trust, and the reliance of one upon the judgment and advice of another."). Because Plaintiff has made the requisite allegations, and because Defendant has failed to cite any authority for her proposition that the relationship with Plaintiff was not of a fiduciary nature, Defendant's motion to dismiss this count should be denied.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each

issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: September 21, 2006        s/ Mona K. Majzoub
                                                      MONA K. MAJZOUB
                                                      UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel fo Record on this date.

Dated: September 21, 2006        s/ Lisa C. Bartlett
                                                      Courtroom Deputy